## UNITED STATES v. LINDSAY et al.
### No. 4686.

United States Court of Appeals
First Circuit.

Feb. 26, 1953.

Melvin Richter, Attorney, Department of Justice, Washington, D. C. (Holmes Baldridge, Asst. Atty. Gen., George F. Garrity, U. S. Atty. and Stanley Wisnioski, Asst. U. S. Atty., both of Boston, Mass., and Paul A. Sweeney, George F. Foley and John G. Laughlin, Attorneys, Department of Justice, Washington, D. C., on brief), for appellant.

Edward C. Park, of Boston, Mass. (Withington, Cross, Park & McGann, Boston, Mass., on brief), for appellees.

Before MAGRUDER, Chief Judge, and WOODBURY and HARTIGAN, Circuit Judges.

WOODBURY, Circuit Judge.

This is an appeal from a judgment entered on motion dismissing an action brought by the United States on a claim of its wholly-owned agency, Commodity Credit Corporation (chartered by Congress June 29, 1948, 62 Stat. 1070, 15 U.S.C.A. § 714 et seq.), to recover from a wool handler named Lindsay, his sureties, and Draper and Company, Inc., a warehouseman, for damage to wool owned by Commodity and stored while under Lindsay's control in Draper's warehouse.

It is alleged in the complaint that the agency named above is the "successor in interest" of another wholly government owned agency of the same name previously chartered by the United States under the laws of Delaware; that the latter corporation entered into a so-called "wool handler's agreement" with Lindsay in 1944; that pursuant to that agreement Lindsay had in his possession wool belonging to Commodity which he stored with Draper; and that on or about February 26, 1945, the wool was "returned to Commodity in a wet and damaged condition" caused by failure "to provide proper storage for the wool and to take such action as might be necessary to keep the wool in good condition." This action was filed on February 29, 1952, and the several defendants each seasonably moved for its dismissal on the ground, among others, that it appeared on the face of the complaint that the right of action set forth therein had not accrued

within six years next preceding the bringing of the action. The court below granted the motions on the ground stated above and in consequence entered the judgment of dismissal from which this appeal is taken.

There was no federal statute putting a period of limitation upon suits by or against the original Commodity Credit Corporation —the one organized under the laws of Delaware. But in the Commodity Credit Corporation Charter Act of June 29, 1948, 62 Stat. 1070, creating the new federally chartered corporation of the same name, it was specifically provided in § 4(c) that "No suit by or against the Corporation shall be allowed unless it shall have been brought within four years after the right accrued on which suit is brought." In June 1949 the four-year time limitation for bringing suits was extended by amendment to six years, 63 Stat. 154, 156, and the time limitation was specifically made applicable to suits such as this by the last sentence of § 4(c) of the 1948 Act wherein it is provided: "Any suit by or against the United States as the real party in interest based upon any claim by or against the Corporation shall be subject to the provisions of this subsection (c) to the same extent as though such suit were by or against the Corporation." The question for decision, therefore, is whether the six-year period of limitation began to run on February 26, 1945, when the wool was returned to original Commodity in damaged condition, or whether it did not begin to run until midnight June 30, 1948, when new Commodity came into being and the statute of limitations included in its Charter Act went into effect.

Giving the statutory language its literal meaning, there can be no doubt that the action brought by the United States is barred, for the cause of action sued upon came into existence, that is to say "accrued," as that word is ordinarily used, when the wool was returned in damaged condition on February 26, 1945, almost exactly seven years before this suit was brought. But counsel for the United States say that to apply the statute to bar the present action is necessarily to give the statute retroactive effect, which on firmly

established principles we are not to assume that Congress intended. Thus we are urged to construe the word "accrued" as having reference to June 30, 1948, the effective date of the statute which created present Commodity and provided a period of limitation upon suits by or against it or the United States as the real party in interest.

It is true that in the leading case of Sohn v. Waterson, 1873, 17 Wall. 596, 21 L.Ed. 737, and in several cases both before and since, statutes putting a limitation on the time for bringing suit worded in much the same way as the statute under consideration were held on the general principle relied upon by the Government to have prospective effect only, that is, to affect existing causes of action only from the time of the passage of the statute limiting time for suit. But the cases in which this construction was adopted were cases between private parties, and the strained construction was openly resorted to only for the purpose of preventing the statutes from summarily cutting off existing rights, and for this reason being unconstitutional. In this case, however, we are not confronted with any constitutional problem.

Certainly Congress could put any period of limitation it thought expedient upon suits brought by an agency of its own creation, such as the one before us, without running any risk of constitutional invalidity. United States v. Union Planters Nat. Bank & Trust Co., 5 Cir., 1949, 175 F.2d 684. Indeed counsel for the United States concede as much. But they say that a retroactive construction of the statute under consideration would create grave constitutional problems with respect to suits against Commodity, and, because the limitation is equally applicable to suits both "by or against the Corporation," no room is left for treating the two kinds of suits differently. We do not find the argument persuasive.

Since consent to sue the United States is a privilege which is revocable at any time, Lynch v. United States, 1934, 292 U.S. 571, 581, 54 S.Ct. 840, 78 L.Ed. 1434; Cummings v. Deutsche Bank, 1937, 300 U.S. 115, 119, 57 S.Ct. 359, 81 L.Ed. 545, it is by no means clear that Congress could not

constitutionally cut off existing causes of action against Commodity by the expedient of enacting a limitation on the time for bringing suit against it. At any rate, there will be enough time to consider whether problems of constitutionality require an interpretation of the statutory provision as applied to suits against Commodity in accordance with the reasoning of Sohn v. Waterson, supra, and like cases, when a suit against Commodity on a stale claim such as the one sued upon here is before us for consideration. Then, presumably, we will be more fully advised as to the constitutional power of Congress to clothe Commodity with the sovereign immunity of the United States from suit, for it would seem from the language used that Congress intended to give the wholly government owned corporate agency it created immunity as of the date of the agency's creation from suit on stale claims, but not immunity from suit on fresh ones. In the meantime speculation is idle. It will suffice to say that we see no reason to give the statutory language a strained construction in the situation before us merely because on the authorities perhaps we might have to give it a strained construction to save its constitutionality in a situation the converse of the one under consideration. In short, we do not think it would be too embarrassing to give the statutory language one meaning in the situation before us, and another in the converse situation of a suit against Commodity, if on full presentation we should feel that such a course was necessary to save the statute from successful attack on constitutional grounds. It follows from the foregoing discussion that we do not find the opinion of the Court of Appeals for the Sixth Circuit in Field Packing Co. v. United States, 1952, 197 F.2d 329 persuasive.

Other arguments of counsel for the United States resting on other provisions of the Commodity Credit Corporation Charter Act and its legislative history have been considered and rejected as not persuasive in view of the clear language of the section under consideration.

The judgment of the District Court is affirmed.