439 So.2d 1032 (1983)
DORCHESTER DEVELOPMENT, INC., Appellant,
v.
Tema BURK, Schwartz & Nash, a Professional Association, Formerly Known As Schwartz, Nash, Heckerling, Tescher and Kantor, a Professional Corporation, a Florida Corporation, Donald Eaton, Jane Levin and Jay Bee Associates, Appellees.
No. 83-712.
District Court of Appeal of Florida, Third District.
November 1, 1983.
*1033 Robert A. Glassman and John R. Farrell, Miami, for appellant.
Schwartz & Nash and Dale A. Heckerling, Miami, for appellees.
Before SCHWARTZ, C.J., and DANIEL S. PEARSON and JORGENSON, JJ.
DANIEL S. PEARSON, Judge.
Dorchester Development, Inc., a developer of a condominium project, appeals from a summary judgment entered in favor of, among others, the purchasers of certain condominium units, which judgment rescinded the agreements to purchase and ordered the refund of the purchasers' deposits.
There are no disputed facts. In January and February 1980, Dorchester entered into separate but identical contracts with each of the purchasers. In June and July 1981, the condominium units were completed. The purchasers, upon being notified of this fact, requested rescission under the Interstate Land Sales Full Disclosure Act, 15 U.S.C. § 1701 et seq. (1982). The Act, in pertinent part, prohibits a developer from making use of any means or instruments of transportation or communications in interstate commerce, or of the mails, in connection with the sale of any real property such as that here involved, unless, inter alia, a printed property report meeting the requirements of Section 1707 of the Act is furnished to a purchaser in advance of the signing of any contract or agreement for sale by the purchaser. 15 U.S.C. § 1703(a)(1)(B). The Act further provides that if no property report is furnished in accordance with the statute, the purchaser, at his option, may revoke the contract within two years of its execution. 15 U.S.C. § 1703(c).
Dorchester concedes that no property reports were furnished to the purchasers. Its position below was, and on appeal is, that the instant transactions come within an exemption to the Act, which states that the Act's provisions are inapplicable to
"[t]he sale or lease of any improved land on which there is a residential, commercial, condominium, or industrial building, or the sale or lease of land under a contract obligating the seller or lessor to erect such a building thereon within a period of two years." 15 U.S.C. § 1702(a)(2) (emphasis supplied).
Dorchester argues that it is within the exemption because the contracts gave the purchasers the option to rescind if the condominiums were not completed within two years, that is, by November 30, 1981. The contracts provide in pertinent part:
"4. ESTIMATED COMPLETION DATE. Seller estimates that the unit will be completed and ready for occupancy by Buyer on or before March 31, 1981. However, the expression of an estimated time of delivery on the part of the Seller is made as an accommodation to Purchaser to assist Purchaser in formulating future plans, but it shall not be considered as time which is of the essence of this Agreement and it shall be subject to amendment by Seller should Seller's progress or plans be altered by conditions unforeseen by or outside the control of Seller, and any such amendment shall not require formal or specific notice by Seller to Purchaser. Purchaser understands and agrees that Seller can neither imply or guarantee a firm completion and availability date for the unit, such advance projections being, and by their nature having to be, approximations only. Seller shall make reasonable effort to meet or to accelerate estimated construction schedule, but Seller shall not be obligated to make, provide or compensate for any accommodations to Purchaser as a result of delayed or accelerated completion.
... .
"17. In the event that the unit is not completed by November 30, 1981, it shall be optional with Purchaser as to whether to extend the date for closing or to cancel this Agreement and receive back a refund of the deposit and all interest earned thereon in which event this Agreement shall become null and void and of no further effect."
*1034 Dorchester contends that the contracts, specifically paragraph 17 thereof, effectively obligate it to erect the condominium by November 30, 1981, that is, within a period of two years.[1] The purchasers argue that nowhere in the contract is there a requirement that Dorchester complete the building and that this omission is fatal to Dorchester's position. We agree with the purchasers.
The provision of paragraph 17 of the contract is not, as we read it, the functional equivalent of an obligation to erect the condominium building within a period of two years so as to bring Dorchester within the exemption. The obligation which a seller must undertake in order to come within the exemption of the Act is, by the Act's plain language, to erect the building within two years. However, the sole obligation which Dorchester undertook was to give the purchasers an option to cancel the contracts and receive back their deposits in the event the condominium units were not erected by November 30, 1981. This latter obligation is no different than the obligation which the Act itself imposes upon Dorchester by virtue of Dorchester's failure to furnish property reports to the purchasers.[2]
A construction contract obligating the seller to complete the called-for building by a time certain is not the equivalent of a contract, as here, which limits the purchaser to the right to the return of his deposit in the event the building is not constructed by a certain time. Where the seller is obligated to complete by a time certain, the purchaser is not limited, as here, to the remedy of rescission, but he may affirm the contract and seek damages. See Marshall v. Karl F. Schultz, Inc., 438 So.2d 533 (Fla. 2d DCA 1983) (where contractor breaches a contract by failing to complete an improvement, owner's measure of damages is the difference between the contract price and the reasonable cost to complete the improvement and damages for delay in the completion of the improvement measured by its rental value during the period of delay); Mazzotta v. Bornstein, 104 Conn. 430, 133 A. 677 (1926) (contractor will be held accountable in damages for delay even if delay in performance is not deemed so material as to allow owner to rescind contract); Richard Deeves & Son v. Manhattan Life Ins. Co., 195 N.Y. 324, 88 N.E. 395 (1909) (where contractor fails to complete building contract by time specified, owner's waiver of right to terminate contract does not waive owner's claim for damages caused by contractor's delay). See also *1035 Ocean Ridge Development Corporation v. Quality Plastering, Inc., 247 So.2d 72 (Fla. 4th DCA 1971); 17A C.J.S. Contracts § 502(4) (1963). Since the Act is to be construed to effectuate its remedial purpose of protecting the land sale consumer, McCown v. Heidler, 527 F.2d 204 (10th Cir.1975); Nargiz v. Henlopen Developers, 380 A.2d 1361 (Del. 1977), we can hardly conclude that a contract which has the effect of limiting the purchaser's remedies conforms to the requirements of the Act.
Nor does Mosher v. Southridge Associates, Inc., 552 F. Supp. 1226 (W.D.Pa. 1982), upon which Dorchester primarily relies,[3] lend any support to its position. In Mosher, the agreement for sale provided that:
"in accordance with the Interstate Land Sales Full Disclosure Act ..., the Developer acknowledges its unconditional obligation to complete and deliver the Unit to Buyer within not more than twenty-four (24) months from the execution of this Agreement." 552 F. Supp. at 1228.
Although the agreement in Mosher also provided that the buyer understood that the developer could not guarantee a firm completion or availability date, and accorded the buyer an option to rescind if the unit was not completed on time, the court found:
"The clear language used by the parties indicates that while the date of delivery cannot be agreed upon with precision it must, nevertheless, precede the expiration of twenty-four months from the date of the agreement. The second quoted paragraph is merely a damage provision in the event the defendant failed to meet its time obligation. It cannot be read so as to render the obligation conditional against the very terms of its expression in the agreement."[4] 552 F. Supp. at 1229.
Therefore, because the contracts in the present cause do not contain an unconditional commitment by Dorchester to complete the condominium units within two years, Dorchester is not exempt from the provision of the Act requiring that it furnish a property report to the purchasers in advance of the signing of the contract. Accordingly, since no property report was furnished, the purchasers had a statutory right to rescission and the refund of their deposits. The judgment of the trial court is
Affirmed.
NOTES
[1] Dorchester correctly does not rely on the fact that the units were actually completed within two years. As the court said in Nargiz v. Henlopen Developers, 380 A.2d 1361, 1364-65 (Del. 1977):

"Henlopen Developers ... points to the fact that although the contract did not expressly require it, the appellant's condominium unit was actually completed within two years from the date of the contract. If the purpose of the Interstate Land Sales Full Disclosure Act is to protect purchasers against fraudulent land development schemes and if the Act is satisfied that no fraud is likely if the sales agreement obligates the seller to erect a building on the land within two years, then Henlopen Developers fails to see where there can be any fraud present when the bargained-for construction is completed within two years. It suggests that to permit the appellant to escape from the contract without penalty under these circumstances is to interpret the Act so as to permit a purchaser to perpetrate a fraud upon a developer who has acted in good faith.
"While this may appear to be true, the fact remains that the federal Act exists and, as we have held, applies to this transaction. To be exempt under § 1702(a)(3) from providing the property report and still avoid the purchaser's statutory right to withdraw, the seller must be obligated under the terms of the sales contract to erect a building within two years. The contract imposed no such obligation here, and the language of the statute makes it clear that no such obligation can be implied."
[2] 15 U.S.C. § 1703(c) provides:

"(c) In the case of any contract or agreement for the sale or lease of a lot for which a property report is required by this chapter and the property report has not been given to the purchaser or lessee in advance of his or her signing such contract or agreement, such contract or agreement may be revoked at the option of the purchaser or lessee within two years from the date of such signing, and such contract or agreement shall clearly provide this right." (emphasis supplied).
[3] Dorchester relies as well on a series of unreported trial court decisions which were included, along with the underlying contracts, in an appendix to its brief. The appellees stipulated to the accuracy of the decisions and contracts and agreed that this court could review them. They are of absolutely no help to Dorchester, not merely because they are not binding on us, but because in each the developer-builder, as in Mosher, unconditionally undertook to complete the unit within two years.
[4] Dorchester's appendix, see n. 3, supra, included the contract between Mosher and Southridge Associates, Inc. The contract includes a provision which was not mentioned in the opinion of the district court. The provision reads: "If for any reason whatsoever Developer should default in the performance of any of the obligations to be performed by Developer pursuant to this Agreement, Developer's liability hereunder shall be limited to the return of any and all monies paid by Buyer. No action for specific performance of this Agreement shall lie in favor of Buyer." This provision, had it not been overlooked by the district court, would likely have caused a different result.